UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHARLES EDWARD ROBINSON                                                PETITIONER
ADC #159800

V.                              NO. 5:17CV00031-BRW-JTR

WENDY KELLEY, Director                                                 RESPONDENT
Arkansas Department of Correction

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Discussion

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Charles Edward Robinson ("Robinson"), an Arkansas Department of Correction ("ADC") inmate. *Doc. 1*. Before addressing Robinson's habeas claims, the Court will review the procedural history of the case in state court.

On December 8, 2014, Robinson appeared in Pulaski County Circuit Court and pleaded guilty to charges in three separate cases:[1]

- Case No. 60CR-11-3885: aggravated robbery (with a firearm enhancement), theft of property, and possession of firearms by certain persons. Robinson was represented by Kathryn Hudson in this case. *Doc. 10-2*.

- Case No. 60CR-13-851: robbery and theft of property. Jessica Duncan was his attorney in this case. *Doc. 10-3*.

- Case No. 60CR-13-933: possession of a controlled substance with intent to deliver. Duncan was his attorney. *Doc. 10-4*.

Before entering those guilty pleas, Robinson and his attorneys signed Plea Statements in each of his cases. Those Plea Statements, marked *Court's Exs. 1, 2 & 3*, are attached to this Recommendation.

On January 15, 2015, Robinson appeared with his attorneys for a sentencing hearing in the three cases.[2] At the hearing, the trial court sentenced him, as a habitual offender, to an aggregate imprisonment term of 60 years, as follows:

- Case No. 60CR-11-3885: 30 years for the aggravated robbery conviction, plus a consecutive 15-year firearm enhancement; 30 years for the theft of property conviction; and 3 years for the firearm-possession conviction, for a total imprisonment term of 45 years. *Doc. 10-2*.

---

[1] The records in Robinson's state cases are electronically accessible at https://caseinfo.aoc.arkansas.gov.

[2] It appears that neither the December 8, 2014 plea hearing nor the January 15, 2015 sentencing hearing was transcribed.

- Case No. 60CR-13-851: 30 years for the robbery conviction, and 30 years for the theft conviction, to be served concurrently with each other and the sentences in his other cases. *Doc. 10-3.*

- Case No. 60CR-13-933: 15 years for possession of a controlled substance, to be served consecutively to the 45-year sentence in Case No. 60CR-11-3885. *Doc. 10-4.*

Robinson did not pursue a direct appeal of his convictions or sentences.[3]

On April 13, 2015, Robinson filed a timely *pro se* Rule 37 petition in the trial court, arguing that his attorneys were constitutionally ineffective in all three cases. *Doc. 10-5*. However, his only specific claims were that: (1) Hudson failed to inform him that the prosecutor had made a plea offer of a fifteen-year sentence, with five years suspended, in Case No. 60CR-11-3885; and (2) his attorneys "coerced" him into pleading guilty.[4] *Id. at 4-8*. On September 2, 2015, the trial court entered an order denying Rule 37 relief. *Doc. 10-6.*

On March 10, 2016, the Arkansas Supreme Court affirmed the trial court's order denying Rule 37 relief. *Robinson v. State,* 2016 Ark. 110, 486 S.W.3d 201.

---

[3]Because he pleaded guilty, his right to appeal was limited. *See, e.g.,* Ark. R. App. P.-Crim. 1(a); Ark. R. Crim. P. 24.3(b); *Burns v. State,* 2017 Ark. 280, at 2-3, 528 S.W.3d 269, 270 (explaining when an appeal is permitted from a guilty plea).

[4]In support of his coercion claim, Robinson alleged in his Rule 37 petition that: the prosecutor showed Hudson and Duncan evidence from an unrelated murder charge to persuade him to plead guilty in the cases where they represented him; Hudson "lost her temper" with him, calling him "the stupidest person she ever dealt with," and later wrote a letter apologizing for her actions; and he pleaded guilty "under duress" and did not realize he would be getting a 60-year sentence. *Doc. 10-5 at 6-7.*

3

On February 6, 2017, Robinson filed this § 2254 habeas action. *Doc. 1*. The Court has liberally construed his *pro se* habeas papers as raising two claims: (1) his attorneys were constitutionally ineffective in advising him to plead guilty in the three cases (*Doc. 1 at 5; Doc. 14 at 6-7)*;[5] and (2) Hudson failed to communicate a plea offer to him in Case No. 60CR-11-3885 (*Doc. 14 at 2)*.

In her Response, Respondent argues that the § 2254 action should be dismissed because the Arkansas Supreme Court reasonably adjudicated Robinson's ineffective assistance of counsel claims in his Rule 37 proceedings. *Doc. 10.*

For the reasons discussed below, the Court recommends that Robinson's § 2254 Petition be denied, and that the case be dismissed, with prejudice.

---

[5]Robinson's § 2254 Petition presents eight specific arguments in support of his claim that his attorneys were ineffective in connection with entry of his guilty pleas: (1) they failed to advise him of the elements and nature of the charges to which he was pleading guilty; (2) they told him that, if he pleaded guilty, he would receive a lesser sentence and lesser charge, he would not be subject to the "three strikes law," and his sentences would be concurrent; (3) Hudson was "so caught up in her feelings" that she overlooked flaws in his case and exhibited unprofessional conduct, later writing him a letter apologizing for losing her temper; (4) both attorneys used an unrelated murder case to "persuade and manipulate" him to plead guilty in the three cases at issue here; (5) in Case No. 60CR-13-851, Duncan advised him to plead guilty even though the charge was based on an unsupported hearsay statement by the victim; (6) both attorneys consulted with the prosecutor about the unrelated murder case, which was "unethical"; (7) he entered a "duress" guilty plea; and (8) the 60-year sentence he received was "cruel and unusual." *Doc. 1 at 5.*

In his Reply to Respondent's Response, Robinson presents seven more arguments in support of this claim: (1) Hudson failed to investigate a key witness; (2) Hudson coerced him into pleading guilty by degrading him, using "derogatory" language, "using his children," and threatening him with a life sentence; (3) Hudson failed to make him aware of the sentence that might be imposed if he pleaded guilty; (4) both attorneys failed to object to the "merger" of the charges in his three cases; (5) Duncan did not properly investigate witnesses or medical records; (6) his attorneys did not advise him about his habitual offender status, the possession of a firearm offense, and the firearm enhancement; and (7) his attorneys failed to adequately represent him at his plea and sentencing hearings. *Doc. 14 at 6-7.*

4

## II. Discussion

### A. Robinson's Claim That His Attorneys Were Constitutionally Ineffective In Advising Him to Plead Guilty

In *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985), the Court held that review of a challenge to a guilty plea, based on ineffective assistance of counsel, is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must establish: first, that the attorney's conduct fell below "an objective standard of reasonableness"; *and*, second, that the attorney's deficient performance prejudiced the defendant's defense. *Strickland,* 466 U.S. at 687-88.[6] In the context of a guilty plea, "prejudice" requires a showing that, but for counsel's deficient performance, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

Under the *Strickland* standard, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the burden to show otherwise "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 17 (2013). "'Surmounting *Strickland* 's high bar is never an easy task,' and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct.

---

[6]If a prisoner fails "to establish either *Strickland* prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

1958, 1967 (2017) (citations omitted). A guilty plea and representations made by a defendant during plea-taking create a "strong presumption of verity" and pose "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).

Finally, while the *Strickland/Hill* standard is deferential, in and of itself, federal habeas review is "doubly deferential" when a state court has made a final adjudication of a habeas petitioner's ineffective-assistance claims.[7] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (stating that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard"). Meeting this very high bar is always a daunting task for a habeas litigant.

### 1. Relevant State Court Proceedings

According to the state court records, Robinson signed a Plea Statement in each of his three cases on December 8, 2014. *Court's Exs. 1, 2 & 3.* The Plea Statements explicitly provided that Robinson: (1) had been charged as a habitual offender in all three cases; (2) was facing a sentence of up to life imprisonment in Case No. 60CR-

---

[7]Where a state court has previously adjudicated a claim on the merits, a federal habeas court may grant habeas relief for the same claim in only three limited situations: (1) when the state court adjudication was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); (2) when the state court adjudication "involved an unreasonable application" of clearly established federal law, *id.*; or (3) when the state court adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

11-3885; and (3) was facing a sentence of up to thirty years in Case Nos. 60CR-13-851 and 60CR-13-933. *Id.*

In each Plea Statement, Robinson acknowledged, by checking "yes" and writing his initials, that: (1) he understood the minimum and maximum possible sentences he was facing; (2) he understood he was waiving his right to a trial by jury and his right to appeal any adverse determination; (3) he fully understood the charges against him; (4) he had fully discussed his case with his attorney and was satisfied with the attorney's services; (5) his plea had "not been induced by any force, threat or promise, apart from a plea agreement"; (6) he understood that, regarding the sentence to be imposed, the trial court was not required to carry out any understanding between him, his attorney and the prosecuting attorney; and (7) he believed that, if his case went to trial, the State could meet its burden of proving his guilt beyond a reasonable doubt. *Id.*

Finally, by signing his name at the end of each Plea Statement, Robinson explicitly acknowledged that: "I am aware of everything in this document. I fully understand what my rights are, and I freely, knowingly and voluntarily plead guilty because I am in fact guilty as charged." *Id.* Each Plea Statement was also signed by either Ms. Hudson or Ms. Duncan, the attorneys who represented Robinson in those cases. As his attorneys, they attested that they had "carefully and completely"

explained the Plea Statement in each case to Robinson and that he appeared to "fully understand all of it." *Id.*

According to the state court records, the same day Robinson and his attorneys executed the Plea Statements, they appeared in the trial court, where Robinson entered guilty pleas in all three cases.[8] On January 15, 2015, Robinson appeared in the trial court with his attorneys for a sentencing hearing. After the hearing, the trial court entered Sentencing Orders in each of his cases. In each Sentencing Order, the trial court expressly found that: (1) Robinson "appeared before the Court, was advised of the nature of the charge(s), of Constitutional and legal rights, of the effect of a guilty plea upon those rights, and of the right to make a statement before sentencing"; and (2) Robinson had "voluntarily, intelligently and knowingly entered a … plea directly to the court of … guilty." *Docs. 10-2 at 1, 10-3 at 1, 10-4 at 1.*

## 2. Analysis

In his Rule 37 petition, Robinson raised some, but not all, of his current § 2254 habeas arguments regarding the allegedly ineffective assistance of his attorneys in advising him to plead guilty. Specifically, the Court finds that the following § 2254 arguments were presented by Robinson in his Rule 37 petition, and adjudicated

---

[8] According to the state court docket sheets, in exchange for Robinson's guilty plea in Case No. 60CR-13-851, the State reduced the robbery to a "B" felony and nolle prossed a felony theft count. In Case No. 60CR-13-933, the State nolle prossed a misdemeanor count of possession of a controlled substance.

by the state courts: Hudson was "so caught up in her feelings" that she overlooked flaws in his case and exhibited unprofessional conduct; both attorneys used an unrelated murder case to "persuade and manipulate" him to plead guilty in the three cases at issue here; both attorneys consulted with the prosecutor about the unrelated murder case, which was "unethical"; he entered a "duress" guilty plea; Hudson coerced him into pleading guilty by "degrading" him and using "derogatory language"; and his attorneys failed to advise him that he would be receiving a 60-year sentence.

In addressing Robinson's Rule 37 claims of ineffective assistance of counsel, the Arkansas Supreme Court correctly recited *Strickland*'s two-part test. *Robinson,* 2016 Ark. 110, at 3-4, 486 S.W.3d at 204. The Court noted the trial court's finding that "Robinson's allegation of coercion was contradicted by plea statements executed by him." *Id.*, 2016 Ark. 110, at 3, 486 S.W.3d at 204. The Court went on to hold:

> … Robinson alleged that counsel [Hudson] coerced him into pleading guilty because after he was charged with first-degree murder, counsel stated that Robinson was "the stupidest person she had ever dealt with" and later sent Robinson a letter apologizing for her remarks. Robinson fails to explain how this conduct intimidated him into pleading guilty.

*Id.,* 2016 Ark. 110, at 5-6, 486 S.W.3d at 205.

Although the Arkansas Supreme Court did not address any allegations of coercion regarding Duncan's representation, the trial court had expressly rejected

Robinson's assertion that the prosecutor and his two attorneys (*both* Duncan *and* Hudson) used the "unrelated murder case" to persuade him to plead guilty in the cases where they represented him. The trial court rejected this as "a conclusory statement with no support in the record." *Doc. 10-6 at 2*. The trial court also specifically held that this allegation against Duncan was inconsistent with Robinson's plea statement in the two cases where she represented him. *Id.*

As an initial matter, neither the trial court nor the Arkansas Supreme Court specified whether it was rejecting Robinson's "coercion" claim because he had failed to demonstrate deficient performance, under the first prong of the *Strickland/Hill* analysis, or because he had failed to demonstrate prejudice, *i.e.*, but for counsel's conduct, he would have insisted on proceeding to trial instead of pleading guilty in all three of his cases. However, under § 2254(d)'s deferential review standard, it is the petitioner's burden to show that "there was *no reasonable basis* for the state court to deny relief," regardless of whether the state court "reveals which of the elements in a multipart claim it found insufficient." *Harrington,* 562 U.S. at 98 (emphasis added). A federal habeas court must determine "what arguments supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" a prior Supreme Court holding. *Id.* at 102.

To receive Rule 37 relief from the state courts, Robinson had to show that: (1) his counsel provided deficient assistance; *and* (2) he was prejudiced as a result. *Id.* at 104. Because the Court finds that the state courts could have reasonably concluded that his attorneys provided adequate representation in advising him to plead guilty, it is not necessary to address the prejudice element.

Importantly, Robinson has not provided nor pointed to *any evidence* supporting the § 2254 claims he is asserting in this action.[9] Conclusory allegations are insufficient to rebut the strong presumption of counsel's competence, or the "strong presumption of verity" that accompanies a guilty plea. *Estes v. United States,* 883 F.2d 645, 647 (8th Cir. 1985); *Blackledge,* 431 U.S. at 74. When a defendant admits he is satisfied with his attorney, there were no threats or promises to induce him to plead, and he voluntarily admits his guilt, he has a "heavy burden" to show his plea was involuntary. *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997). Once a person has entered a guilty plea, "any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are

---

[9] The only "evidence" Robinson offers is a February 9, 2014 letter he received from Hudson, where she: (1) apologized for losing her temper at their last visit; (2) told him she was "afraid" for him and his "grave situation," involving several criminal cases with multiple felonies; and (3) told him he had "no viable defense" to a murder charge and encouraged him to accept a plea offer in that case, rather than risk a life sentence. *Doc. 1 at 17-18.* Robinson received this letter ten months before he pleaded guilty in the criminal cases at issue in this § 2254 action, and most of it concerned a murder charge which is not being challenged here. Thus, as the Arkansas Supreme Court found, the letter adds little, if any, support to his claims that Hudson coerced him into pleading guilty to the charges at issue.

11

contentions that in the face of the record are wholly incredible." *Blackledge,* 431 U.S. at 74.

As discussed, the contemporaneous evidence, from Robinson's plea and sentencing proceedings, contradicts his current allegations that his attorneys failed to properly advise him or coerced him into pleading guilty. For example, as part of his Plea Agreement in all three cases, Robinson attested, *in writing*, that he had fully discussed his cases with his attorneys, he was satisfied with their services, he fully understood his rights, the guilty pleas he was entering were *not* induced by any threats or promises, and he was "freely, knowingly and voluntarily" pleading guilty. *Court's Exs. 1, 2 & 3.* In addition, the court records show that he appeared in court with his attorneys and, after being advised by the trial court of the charges and his rights, he "voluntarily, intelligently and knowingly entered a … plea directly to the court … of guilty." *Docs. 10-2, 10-3 & 10-4. Nothing* in the trial court's contemporaneous records reflects that Robinson took any actions or made any statements indicating that he was dissatisfied with his attorneys' representation, did not understand the nature and consequences of his guilty pleas, or was entering anything other than voluntary pleas.

Robinson's conclusory allegations in this § 2254 action are simply insufficient to overcome the *Strickland/Hill* presumption of attorney competency, the "strong presumption of verity" accompanying a guilty plea, and the state courts'

determinations that his attorneys did *not* "coerce" him into pleading guilty. Thus, he has failed to meet his burden of showing that the state courts' decisions were contrary to, or an unreasonable application of, any federal law, or that the decisions were based on an unreasonable determination of the facts in light of the state court record. *See* 28 U.S.C. § 2254(d).

Similarly, the "new" arguments Robinson makes in this § 2254 action do not entitle him to federal habeas relief under the deferential standards for reviewing claims that an attorney rendered ineffective assistance in connection with entry of a guilty plea.[10] All of those new arguments are conclusory, contradicted by the state court record, or legally insufficient, and none of them can overcome the presumptions imposed by *Strickland/Hill* and the law regarding guilty pleas.

As discussed, the record clearly refutes Robinson's allegations that his attorneys inadequately advised him about all of the charged offenses, the possible

---

[10]Robinson did *not* present the following § 2254 arguments in his state court proceedings: his attorneys failed to advise him of the elements and nature of the charges; they told him that if he pleaded guilty, he would receive a lesser sentence and lesser charge, he would not be subject to the "three strikes law," and his sentences would be concurrent; in Case No. 60CR-13-851, Duncan advised him to plead guilty even though the charge was based on an unsupported hearsay statement by the victim; his 60-year sentence was "cruel and unusual"; Hudson failed to investigate a key witness; she coerced him into pleading guilty by "using his children" and threatening him with a life sentence; both attorneys failed to object to the "merger" of the charges in his three cases; Duncan did not properly investigate witnesses or medical records; his attorneys did not advise him about his habitual offender status, the possession of a firearm offense, and a firearm enhancement; and his attorneys failed to adequately represent him at his plea and sentencing hearings.

Respondent does *not* argue that any portion of Robinson's claim is procedurally defaulted; therefore, the Court has proceeded to the merits of all of his arguments.

sentences, the consequences of his guilty plea, and his habitual offender status. Importantly, as a result of his attorneys' efforts, some of Robinson's charges were *reduced* or *dismissed* in exchange for his pleas; he received an aggregate sentence that was significantly *less* than the statutory maximums; and the trial court agreed to run most of his sentences *concurrently*.

Insofar as Robinson complains that his attorneys did not adequately prepare or investigate his cases or the evidence against him, his guilty pleas waived any arguments related to the pre-plea action or inactions of his attorneys, which were *not* connected to the entry of his guilty pleas. *See Tollett v. Henderson,* 411 U.S. 258, 266-67 (1973); *Thundershield v. Solem,* 565 F.2d 1018, 1026-27 (8th Cir. 1977); *Whitepipe v. Weber,* 536 F. Supp. 2d 1070, 1082-83 (D.S.D. 2007) (habeas petitioner "may only present [ineffective assistance of counsel] claims relating to the plea advice" that go to the voluntariness of the plea).

Finally, Robinson's conclusory assertion that his exposure to a life sentence amounted to unconstitutional "coercion" to plead guilty runs counter to well-established case law. "[A]n otherwise valid plea is not involuntary because [it was] induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial." *Parker v. North Carolina,* 397 U.S. 790, 795 (1970).

14

Accordingly, the Court recommends that Robinson's claim, that his attorneys were ineffective in advising him to plead guilty, be dismissed as without merit.

## B. Robinson's Claim that Counsel Was Ineffective for Failing to Communicate Plea Offer

Robinson also argues that he did not "know[] about an old plea offer … because of a lack of communication" with Hudson, in Case No. CR60-11-3885. *Doc. 14 at 2.* This is the *same claim* that the Arkansas Supreme Court explicitly rejected in Robinson's Rule 37 proceedings:

> To demonstrate [*Strickland*] prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, a petitioner must show a reasonable probability both that the plea offer would have been accepted had counsel communicated the offer and that the plea would have been entered without the prosecution's canceling it or the trial court's refusal to accept. *Missouri v. Frye,* 132 S. Ct. 1399, 1402-03 (2012). Thus, a petitioner must demonstrate that but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* at 1410. Allegations of ineffective assistance of counsel in the context of plea negotiations must establish some direct correlation between counsel's deficient behavior and the decision to enter the plea. *Pennington [v. State],* 2013 Ark. 39, at 1-2, 2013 WL 485660.
>
> A bare assertion that a plea offer was made, standing alone, is insufficient to warrant relief based on an ineffective-assistance-of-counsel claim alleging that counsel failed to communicate the offer. *Huddleston v. State,* 347 Ark. 226 230-31, 61 S.W.3d 163, 167-68 (2001) (per curiam). A collateral attack on a valid judgment must be founded on more than an unsubstantiated allegation, and a petitioner who provides no evidence that a State plea offer existed that counsel failed to communicate has no merit and should be denied. *Huddleston,* 347 Ark. at 230-31, 61 S.W.3d at 167-68. Therefore, based on the absence of any evidence that the plea offer was made, Robinson's bare allegation fails to warrant relief.

15

> Even assuming that Robinson presented sufficient proof that a more lenient plea offer was made, his allegations are insufficient to warrant relief under the standard enunciated in *Frye,* 132 S. Ct. 1399. Robinson did not allege that he would have accepted the offer had counsel communicated it to him, and he did not allege that he would have accepted the plea offer if his request for postconviction relief had been granted. Rather, Robinson merely asked that he be given the opportunity to consider accepting the offer. Furthermore, the assertions made in Robinson's Rule 37.1 petition did not establish a correlation between his counsel's alleged failure to communicate the plea offer and the outcome of the proceeding. According to the allegations contained in the petition, the favorable plea offer was withdrawn because Robinson was charged with first-degree murder, not because counsel delayed communicating the offer within a stated time frame. In sum, Robinson failed to state facts sufficient to demonstrate a reasonable probability that, but for counsel's errors, a more lenient plea offer would have remained on the table and would have been accepted by him. *See Frye,* 132 S. Ct. at 1411 (remanding to determine prejudice because there was reason to doubt that the prosecution would have adhered to the original offer after Frye committed an additional offense).

*Robinson,* 2016 Ark. 110, at 4-5, 486 S.W.3d at 204-05.

In this § 2254 action, Robinson does not address whether the Arkansas Supreme Court's ruling was contrary to established federal law, as set forth in *Strickland* and *Frye*, or argue that the ruling was based on an unreasonable determination of the facts. Accordingly, he has failed to meet his burden of showing that the Arkansas Supreme Court's decision (holding that his counsel was not ineffective regarding the plea offer) was: (1) contrary to, or an unreasonable application of, federal law; or (2) based on an unreasonable determination of the facts in light of the state court record.

Accordingly, the Court recommends that Robinson's claim, that his attorney failed to communicate a plea offer, be dismissed as without merit.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Robinson's 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus, *Doc. 1,* be DENIED, and this case be DISMISSED, WITH PREJUDICE; and

2. A Certificate of Appealability be DENIED, *see* 28 U.S.C. § 2253(c); § 2254 Rule 11(a).

DATED this 5th day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE